ANDERSON & THOMPSON, ET AL. VS. ANN BIDDLE.

S. with the funds of B., purchased certain shares of stock of the St. Louis Insurance Company, for B., but had the stock entered in the name of S. S., however, never pretended to set up any claim to the stock, but informed the officers of the Company, and others, that it belonged to B. B., from ill health and other causes, had her business transacted by agents. No fraud upon the creditors of B. was pretended. An execution against S. was levied on this stock—

Held:—

1. That this case is not within the provisions of the statute of frauds.

2. That the stock is not liable for the debts of S.

3. That equity will interfere to prevent the sale by the sheriff, the remedy of B. at law, if any, being insufficient.

APPEAL from St. Louis Circuit Court.

CROCKETT & BRIGGS *for Appellants.*

SPALDING *for Appellee.*

POINTS AND AUTHORITIES.

A purchaser of property with notice, at the time of purchase, of another's equity in, or equitable right thereto, takes it subject to the same equity, and acquires no more right therein than the person had from whom he purchased, (2 Story's Equity 443, §1201;) Davis vs. McCloy, 2 Mo. Rep. 130; 1 Story's Equity 383, §395-6; ibid 396, §409-10; and the note at page 398; 2 Story's Equity 503, §1257; ibid 508, §1264; 1 J. C. R. 301, notice of an incumbrance stops all further proceedings towards the completion of the purchase or the payment of the money; 7 J. C. R. 65; 1 J. C. R. 566. If purchaser has notice of the trust at the time of the purchase, he himself be-

comes trustee, notwithstanding the consideration paid. 2 Sugden on Vendors, 268-9. "If a pur-chaser have notice of any claim or incumbrance, his conscience is affected." It is a general rule that a purchaser with notice is, in equity, bound to the same extent and in the same manner as the person of whom he purchased. 2 Sugden on Vendors, 274, (top page 313,) notice before actual payment of all the money, though it be secured and the conveyance actually executed, or before the execution of the conveyance, notwithstanding that the money be paid, is equivalent to notice before the contract. 2 Sugden on Vendors, 303, 456.

2. The statute of frauds has nothing to do with the case, it being personal property; but even were it land, it would not have embraced it. Rev. Code of 1835, page 283-4, §10 and 11. Where property is purchased with A.'s money, for A., and the title made to C., the fact may be shown by parol, even under the 10th section of act on frauds, which is similar to that in New York and England. 1 John. Chy. Rep. 341, 583; 2 John. Chy. Rep. 405; 2 Sugden on Vendors 135.

3. There is no proof that the complainants trusted Swearingen on the faith of his being the own-er of the stock, or that they ever heard of that stock till about the time of the sheriff's levy. They therefore have not been injured by his apparent ownership of it, except so far as the costs of levy; nor is there any proof that he ever got credit any where in consequence of that stock, but there is evidence of the contrary.

4. That a levy was made under *an execution* gives no stronger claim on the property, than if a person had entered into an agreement with Swearingen to purchase it, being ignorant at the time of Mrs. Biddle's claim; and in either case, her rights would be secured by notice before the completion of the purchase by payment of the money and actual conveyance of the property. 2 Dallas Rep. 360, is a case of bill for restraining transfer of stock.

NAPTON, J., *delivered the opinion of the Court.*

This case was a suit in Chancery to enjoin the sale of certain stock in the St. Louis Insurance Company, which had been purchased by the complainant in the name and through the agency of J. T. Swearingen, and was taken in execution to satisfy his debts. The plaintiffs in the several executions, the defendant, Swearingen, the Insurance Com-pany, and the sheriff, were made parties defendant to the bill. The complainant alleged in her bill, that she was the owner of the stock levied on, and always had been since the subscription for the same; that the stock was purchased and had remained in the name of the said Swearingen, as a matter of convenience to her at first, but that she had paid all the calls made by the Company, and that the Company through its officers had been apprised of her ownership. That through careless-ness and inattention to her business, partly induced by ill health, the complainant had neglected to have the stock transferred to her, in con-sequence of which it had been levied on by the creditors of said Swearingen, he (Swearingen) being at the time of such levy totally insolvent. The bill prays an injunction to stay the sale, and that the said Swearingen executed a transfer of said stock, and that the same be entered on the books of the Company. An injunction was accordingly

granted. Anderson and Thompson, who were partners, admitted .in their answer the execution and proceedings thereon, but denied all knowledge of Mrs. Biddle's interest, and relied upon the want of equity in the bill. Swearingen, in his answer, admitted the facts stated in the bill, and further stated that he informed the officers of the Insurance Company, at the time the stock was taken, that it was for Mrs. Biddle ; that he never drew any dividends, never considered or treated it as his property, or contracted any debts on the faith of it; that in 1840 or 1841 he had requested complainant to have the stock transferred to her own name, and in course of time thought this had been done, and when the executions were levied, it had entirely escaped his mind that the complainant's stock still stood in his name.

No question has been raised in this Court which renders necessary any detail of its testimony which was given at the hearing of the case. It appears clear that no actual fraud was contemplated by the parties in this stock transaction. It seems that the stock was taken in 1836, and that Swearingen failed in 1840 or 1841, and that the executions were levied in 1844. The testimony also shows, that Mrs. Biddle's health had been precarious for some years previous to the filing of the bill, during a portion of which time she was absent from St. Louis, and her business was transacted entirely by her agents; that she was the *bona fide* owner of the eighteen shares of stock levied on; that no motive could have existed on her part to place any portion of her property beyond the reach of *her* creditors. These facts are not disputed, and the only question is, whether the transaction is such an one as the law pronounces a fraud, so as to subject the stock in Swearingen's name to the payment of Swearingen's debts.

There is no provision in our statute concerning fraudulent conveyances which, in terms, embraces a case like the present. The first section is designed to protect the creditors of fraudulent *grantors,* where the beneficial interest in the property has been retained by such grantors, and a mere legal title conveyed to a third person. If the section be construed to extend to implied as well as express trusts, the creditors of Mrs. Biddle, in the present case, might claim its benefit to protect them against the legal title of Swearingen. But the creditors of Swearingen cannot expect to have the benefit of Mrs. Biddle's property to pay Swearingen's debts, unless that property has been placed in such a situation as to give Swearingen a delusive credit. The property levied on in the present case, does not seem to be of a character which could possibly be made to effect any such consequences. Swearingen could

not obtain credit on the faith of being owner of this Insurance stock, for if inquiries had been made at the office of the Company, where alone information could be sought for, they must have resulted in a knowledge of the ownership of the complainant. In point of fact, Swearingen did not represent himself as the owner; but, on the contrary, informed every one who made any inquiries in relation to the matter, or who were entitled to correct information on the subject, that the stock belonged to Mrs. Biddle.

The fifth section of the statute is also relied on to subject this stock to the payment of the executions. That section, among others things, provides that reservations or limitations of property by way of condition or remainder, shall be void as against the creditors of the person in possession, unless such reservations have been made in writing and properly acknowledged and recorded. If we give this section a literal construction, it is obvious that it can have no application to the transaction now under consideration. There was no reservation by way of condition of remainder. Swearingen was a trustee by implication of law. But if it were conceded that the nature of Mrs. Biddle's title was such as to bring it within the spirit of the fifth section, it may still be questioned whether the property was of that character, the possession of which by a paper title could mislead or deceive any one, or give a false credit to Swearingen. Were choses in action within the contemplation of the law makers in framing the fifth section? Was it not merely designed to require the separation of title and possession in such property, only, as was capable of visible and tangible ownership, to be manifested to the world by being spread upon the public records?

As to the power of a Court of Chancery to grant an injunction in this case, we suppose it rests not so much upon the peculiar character of the property about to be sold, as upon the character of the complainant's title, which would prevent her from following the property in the hands of the purchasers, or maintaining trespass against the officer or plaintiffs in the executions. The remedy at law, if any existed, was at best incomplete and inadequate to the purposes of justice. The complainant was compelled to go into Chancery to get the legal title; without it she could not maintain her action at law, and without it, a sale under execution would have clearly passed a good title to the purchasers.

Decree affirmed.